```
_____  )
                             )
TY MCGRATH and JULIANNE MCGRATH, )
                             )
         Plaintiffs,         )
                             )
         v.                  )
                             )
TOWN OF SANDWICH, BRIAN A.   )    Civil Action No.
BONDAREK, CHRISTA L. CABRAL, )    13-12381-NMG
ELLIN C. BOORAS, CHARLES RICHARD )
CANFIELD, DAVID J. GUILLEMETTE, )
PETER N. WACK, JOHN DOE #1 and )
JOHN DOE #2,                 )
                             )
         Defendants.         )
_____  )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This civil rights and tort case arises out of an alleged bullying incident that took place at Sandwich High School ("SHS") in 2011. Plaintiff Ty McGrath ("Ty"), who was an 18-year-old senior at the time, was suspended from school and charged with felony assault after he allegedly bullied and assaulted a 14-year-old SHS freshman. The felony charges against Ty were later reduced to misdemeanor charges and he was eventually acquitted of all criminal conduct.

Ty and his mother, Julianne McGrath ("Julianne"), allege that the Town of Sandwich ("the Town") and several individual defendants are liable for various civil rights and tort violations. First Ty asserts claims against Sandwich Police

Officer Brian Bondarek ("Officer Bondarek"), an unknown Sandwich Police officer ("John Doe #2") and the Town for his allegedly wrongful arrest, interrogation and criminal prosecution. Ty also asserts claims against the Town, SHS Principal Ellin Booras ("Principal Booras"), School Superintendent Charles Canfield ("Superintendent Canfield"), Officer Christa Cabral ("Officer Cabral") and another unknown Sandwich Police officer ("John Doe #1") in connection with his suspension from SHS. Ty and Julianne further allege that they suffered other harms at the hands of the Sandwich Police Department after they complained about Officer Bondarek's handling of Ty's case.

Plaintiffs filed their complaint in October, 2013. Officer Bondarek has since moved to dismiss Counts 12 and 18, both of which allege that he participated in conspiracies to present false testimony against Ty. Officer Cabral, Principal Booras, Superintendent Canfield and the Town have moved to dismiss Counts 17 through 26, all ten of which arise out of school disciplinary proceedings that resulted in Ty's suspension.

## I.   **Background**

The Court accepts as true the following allegations of the plaintiffs for the purpose of analyzing the motions to dismiss.

### A.   **Interrogation by Officer Bondarek**

On November 7, 2011, Ty allegedly assaulted a 14-year-old member of the SHS football team. Following that incident,

Officer Bondarek asked Ty to come to the Sandwich Police Station to be interviewed.  Ty arrived at the station at about 8:07 P.M. and was accompanied by Julianne.  Officer Bondarek told them that he had photographs of injuries sustained by the other student.  He placed Ty under arrest for assault and battery with a dangerous weapon (a shod foot).  Ty and Julianne repeatedly told Officer Bondarek that Ty wanted an attorney and did not want to speak with him but he ignored those requests and took Ty to the booking room at 8:13 P.M.

In the booking room, Officer Bondarek repeatedly urged Ty to describe what had happened at the school that day.  Ty was never read his <u>Miranda</u> rights or told that he had a right under Massachusetts law to have the interrogation recorded.  Eventually, Ty told Officer Bondarek his version of what had happened.  Officer Bondarek did not record what Ty said and instead wrote down an inaccurate account of the incident involving Ty pushing the bristles of a broom and a brownie into the face of the other student.  Officer Bondarek then gave Ty a "rights form" to sign and told him to write that he had signed the form at 8:10 P.M. even though Ty did not enter the booking room until 8:13 P.M.  Officer Bondarek also told Ty to sign the statement which had been drafted by Officer Bondarek and to write that he had signed the form at 8:24 P.M.

Ty was released on bail after 9:00 P.M. that evening.  At that time, Officer Bondarek told Julianne that he had spoken with Principal Booras and she wanted to charge Ty with a hate crime, none of which was true.  Furthermore, his report, which stated that Ty admitted to the assault, was provided to the press and some of the colleges to which Ty had applied.  At least one local news article stated that, according to the report, Ty had admitted to the assault.

As a result of his arrest and interrogation, Ty suffered, inter alia, panic attacks, loss of sleep, loss of appetite, depression and gastrointestinal distress.  He attempted suicide shortly after he was arrested.

### B.    School Disciplinary Proceedings

Officer Cabral, who was the designated "resource officer" of the Sandwich Police Department assigned to SHS, investigated the alleged assault prior to the suspension hearing and concluded that an assault had indeed taken place.  She read Officer Bondarek's report before she began her investigation.

On November 9, 2011, a pre-suspension "due process" hearing was held at SHS.  Principal Booras reviewed Officer Bondarek's report before the hearing.  The hearing was not recorded and no transcripts were made.  In attendance were the McGraths, Officer Cabral, Principal Booras, a school counselor and the SHS athletic director.  During the hearing, Officer Cabral testified

-4-

that she had seen photos of the injuries that Ty inflicted upon the other student. No such photos existed. The McGraths were told that there were witnesses to the incident but the identities and statements of such witnesses were not disclosed.

On the following day, Principal Booras informed the McGraths that Ty would be suspended from participating in all school activities for ten days. She sent the McGraths a formal letter in which she explained her reasons. The McGraths appealed to Superintendent Canfield and were notified on November 18, 2011 that he had upheld Ty's suspension.

As a result of his suspension, Ty missed the final two games of the football season and his team's award ceremony. He continued to suffer from the physical symptoms listed above.

### C.    Prosecution on Felony Charges

Officer Bondarek's report served as the basis for a criminal complaint charging Ty with two counts of assault and battery with a dangerous weapon (a shod foot and a broomstick).

In January, 2012, the Barnstable County District Court held a hearing on Ty's motion to suppress the statements he made at the Sandwich Police Station on November 7, 2011. Officer Bondarek testified at the hearing and made several false statements. The presiding judge allowed Ty's motion to suppress on the grounds that 1) Officer Bondarek admitted to hearing Julianne tell Ty not to answer questions without a lawyer and 2)

Officer Bondarek did not record the interrogation. The court reasoned that Ty's statements were involuntary.

In February, 2012, the state district court ruled that probable cause did not exist for the felony charges of assault and battery with a dangerous weapon and reduced the charges to two misdemeanor counts of assault and battery. Ty was acquitted of those charges by a six-person jury in March, 2012.

## II. Motions to Dismiss

### A. Legal Standard for Motions to Dismiss

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). Yet "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice to state a cause of action. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of anything more than the mere possibility of misconduct. Id. at 679.

**B. Claims Based Upon Alleged Failure by Principal Booras and Superintendent Canfield to Provide Due Process in School Disciplinary Proceedings (Counts 23-26)**

### 1. Legal Standard

The Federal Civil Rights Act, codified at 42 U.S.C. § 1983 and hereafter referred to as "§ 1983", affords individuals a cause of action against persons who, while acting under color of law, deprive them of a right or privilege secured by the Constitution or laws of the United States. <u>Cruz-Erazo</u> v. <u>Rivera-Montanez</u>, 212 F.3d 617, 621 (1st Cir. 2000).

Here, Ty alleges that the school disciplinary proceedings violated his right to procedural due process under the Fourteenth Amendment. In order to state a procedural due process claim under § 1983, a plaintiff must establish

> (1) that he has a property interest defined by state law and (2) that the defendants, acting under the color of state law, deprived [him] of that interest without adequate process.

<u>Licari</u> v. <u>Ferruzzi</u>, 22 F.3d 344, 347 (1st Cir. 1994) (citing <u>PFZ Properties, Inc.</u> v. <u>Rodriguez</u>, 928 F.3d 28, 30 (1st Cir. 1991)).

If a plaintiff successfully identifies a property interest that entitles him to due process, the question becomes what process is due. Here, the parties agree that Ty's interest in a free public education is a protected property right, <u>Gorman</u> v. <u>Univ. of R.I.</u>, 837 F.2d 7, 12 (1st. Cir. 1998), but disagree

about whether SHS provided him with adequate process before suspending him from all school activities for ten days.

Notice and an opportunity to be heard are the "essential prerequisites" of procedural due process. Goldberg v. Kelly, 397 U.S. 254, 267-68 (1970). A public school student facing a short suspension of no more than ten days must, at a minimum, receive

> oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.

Goss v. Lopez, 419 U.S. 565, 581 (1975). A school is not, however, required to allow a student to retain counsel, confront or cross-examine the witnesses against him or call his own witnesses. Id. at 583.

The First Circuit Court of Appeals has warned against the "undue judicialization of an administrative hearing, particularly in an academic environment" and explained that a court reviewing an administrative hearing in a public school setting should not "extol form over substance". Gorman, 837 F.2d at 14, 16. In other words, the procedural due process inquiry is unconcerned with whether the procedure could have been better and instead asks if, under the circumstances, "the hearing was fair, and accorded the individual the essential elements of due process." Id. at 16.

### 2. Principal Booras (Count 23)

#### a. Explanation of Evidence Against Ty

Count 23 of the Complaint alleges that Principal Booras, acting in her individual capacity, interfered with Ty's right to an education without adequate due process. The parties agree that Ty received notice of the hearing and an opportunity to explain his side of the story but disagree about whether Principal Booras provided Ty with a sufficient explanation of the evidence supporting his suspension.

Ty contends that Principal Booras failed to provide him with such an explanation as required by <u>Goss</u>. At this early stage in the litigation, the Court must accept as true his allegations that 1) Principal Booras told him that she had statements from several witnesses but did not describe the substance of those statements, 2) Principal Booras obtained and reviewed the police report completed by Officer Bondarek in advance of the hearing but did not inform Ty that it was part of the evidence against him and 3) the only evidence that was disclosed was that Officer Cabral claimed to have seen photographs of injuries to the other student and that witnesses had given statements. Those allegations suffice to state a claim of failure to provide due process in violation of § 1983.

Counsel for Principal Booras argued at the hearing that she was not obligated to provide any explanation because Ty did not

refute the charges against him.  That argument relies on the

directive in <u>Goss</u> that a defendant must be provided with

> oral or written notice of the charges against him and,
> <u>if he denies them</u>, an explanation of the evidence the
> authorities have....

<u>Goss</u>, 419 U.S. at 581 (emphasis added).

Principal Booras is correct that Ty has not specifically

pled that he denied the allegations against him at his school

disciplinary hearing.  The letter from Principal Booras

explaining the reasons for Ty's suspension supports her

contention in that it attributes several admissions to Ty.  The

letter also affirms, however, that "[t]he police report states

that Ty called the student a "fat pig" and "Ty is reported to

have repeatedly punched, pushed, and kicked the boy".  Drawing

all inferences in favor of Ty, the Court cannot rule as a matter

of law that he failed to refute all of the charges against him

even if he admitted some wrongdoing.

### b.   Qualified Immunity

Furthermore, the Court cannot conclude that Ty's claim

against Principal Booras is barred by the doctrine of qualified

immunity at this stage of the litigation.  Qualified immunity

protects government officials who perform discretionary

functions from liability for civil damages

> insofar as their conduct does not violate clearly
> established statutory or constitutional rights of
> which a reasonable person would have known.

<u>Harlow</u> v. <u>Fitzgerald</u>, 457 U.S. 800, 818 (1982). The First
Circuit examines two factors when considering whether a
defendant is entitled to qualified immunity:

> (1) whether the facts alleged or shown by the
> plaintiff make out a violation of a constitutional
> right; and (2) if so, whether the right was "clearly
> established" at the time of the defendant's alleged
> violation.

<u>Maldonado</u> v. <u>Fortunes</u>, 568 F.3d 263, 269 (1st Cir. 2009) (citing
<u>Pearson</u> v. <u>Callahan</u>, 555 U.S. 223, 232 (2009)). A right is
"clearly established" if 1) the contours of the right are
sufficiently clear so as to put a reasonable official on notice
that she was violating that right and 2) based on the facts of
the particular case at hand, "a reasonable defendant would have
understood that [her] conduct violated the plaintiff's
constitutional rights." <u>Id.</u> (citing <u>Anderson</u> v. <u>Creighton</u>, 483
U.S. 635, 640 (1987) and <u>Brosseau</u> v. <u>Haugen</u>, 543 U.S. 194, 198
(2004) (per curiam)).

Because Ty has adequately pled the violation of his
Fourteenth Amendment right to due process, the sole question is
whether he had a clearly established right to be told that the
evidence against him included allegations in a police report and
to be informed of the content of witness statements. It is a
close question. On the one hand, the Court does not read <u>Goss</u>
to require a school administrator to disclose <u>all</u> evidence of
misconduct to a student facing a short suspension. See <u>Smith</u> ex

rel. <u>Smith</u> v. <u>Seligman Unified Sch. Dist. No. 40</u>, 664 F. Supp. 2d 1070, 1077 (D. Ariz. 2009). On the other hand, <u>Goss</u> does require that a student be provided with the evidence against him so that he has a fair opportunity to respond and Ty's allegations, taken as true, are that Principal Booras provided Ty with only very limited information about his alleged misconduct. <u>Compare</u> <u>Pomeroy</u> v. <u>Ashburnham Westminster Reg'l Sch. Dist.</u>, 410 F. Supp. 2d 7, 15-16 (D. Mass. 2006) (finding that expulsion hearing failed to satisfy even the minimal due process requirements for short suspensions because the student and his parent were required to leave the room before any witnesses testified) <u>with</u> <u>Smith</u>, 664 F. Supp. 2d at 1077 (finding administrator who did not disclose all evidence but "discussed the who, what, when, and where" with the student was entitled to qualified immunity).

The Court concludes that Ty's right to be informed of the evidence against him was sufficiently clear at the time of the incident to put a reasonable official on notice that she was violating that right and, based on the allegations in the Complaint, a reasonable official would have understood that categorically declining to disclose the content of witness statements or a report of the incident violated that right. <u>Maldonado</u>, 568 F.3d at 269. As a result, the Court cannot

determine at this stage of the proceedings whether Principal
Booras is entitled to qualified immunity.

### 3.    Superintendent Canfield (Count 24)

On the other hand, Ty's claim that he received insufficient
process in his appeal to Superintendent Canfield will be
dismissed.  Ty had no procedural due process right to appeal a
decision to suspend him for ten days or fewer and therefore was
not entitled to any due process protections in the gratuitous
review of his suspension by Superintendent Canfield. See Heyne
v. Metro. Nashville Pub. Schs., 655 F.3d 556, 569-70 (6th Cir.
2011) (collecting cases and concluding that actions taken by
school officials during discretionary appeal of suspension could
not violate the student's right to due process even if contrary
to school policies or state law).

### 4.    The Town (Counts 25 and 26)

#### a.    Unconstitutional Policies, Practices and Procedures (Count 25)

Count 25 of the Complaint alleges that the unconstitutional
policies, practices and procedures of the Town directly caused
Principal Booras to violate Ty's right to due process and that
the Town is therefore liable under a respondeat superior theory
of liability. Monell v. Dep't of Social Servs., 436 U.S. 658
(1978).  Specifically, Ty claims that 1) the SHS Student
Handbook, which set for the Town's policies for SHS, did not

-13-

require administrators to explain evidence of misconduct to students facing suspension and 2) Superintendent Canfield "pre-approved" the decision to keep all evidence from Ty.

The Court rejects Ty's reading of the handbook to permit an administrator to suspend a student without explaining the evidence against him or her. That interpretation is unsupported by the text of the handbook, which explicitly states that the <u>Goss</u> decision requires administrators to provide students with an explanation of the evidence against them. <u>See</u> SHS Student Handbook 2011-2012, ECF No. 25-1, p. 10.[1]

Ty has, however, stated a claim for municipal liability with respect to the conduct of Superintendent Canfield. In some instances, a municipality may be held liable for an unconstitutional policy based upon a single decision by a policymaker. <u>Pembaur</u> v. <u>City of Cincinnati</u>, 475 U.S. 469, 480-81 (1986). Here, Ty's claim that Superintendent Canfield "pre-approved" the decision to withhold evidence from Ty constitutes such a policy decision. Moreover, for the purposes of Ty's suspension, Superintendent Canfield was the final policymaker because the SHS Student Handbook did not permit a student who was suspended for ten days or fewer to appeal that decision to

---

[1] Ty explicitly relies upon the SHS Handbook for the allegations in Count 25. The handbook is therefore properly before the Court even though it was not attached to the Complaint and was provided to the Court by defendants. <u>Clorox Co. P.R.</u> v. <u>Proctor & Gamble Commercial Co.</u>, 228 F.3d 24, 32 (1st Cir. 2000).

the School Committee. See SHS Handbook, supra, p. 10; City of
St. Louis v. Praprotnik, 485 U.S. 112, 128-30 (1988) (plurality
opinion).  Finally, while Ty's claim that Superintendent
Canfield "pre-approved" the decision to withhold evidence
strains credulity, the Court is obligated to accept it as true
for the purpose of the motion to dismiss. See Ocasio-Hernandez
v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) ("Non-
conclusory factual allegations in the complaint must...be
treated as true, even if seemingly incredible." (citing Iqbal,
556 U.S. at 681)).

### b.    Failure to Train (Count 26)

Count 26 asserts that the Town violated Ty's right to
procedural due process by failing to train and supervise its
school administrators adequately.  The Court agrees with
defendants that this claim should be dismissed.

A municipality is liable for failure to train only if such
a failure demonstrates a "deliberate indifference" to the rights
of its citizens. City of Canton v. Harris, 489 U.S. 378, 389
(1989).  Deliberate indifference exists where a municipality

> fails to provide adequate training notwithstanding an
> obvious likelihood that inadequate training will
> result in the violation of constitutional rights.

Whitfield v. Melendez-Rivera, 431 F.3d 1, 10 (1st Cir. 2005).

In most instances, a plaintiff who asserts liability
against a municipality based on an alleged failure to train must

show a pattern of violations in order to prove deliberate indifference. <u>Connick</u> v. <u>Thompson</u>, 131 S. Ct. 1350, 1360 (2011) (citing <u>Bd. of Cnty. Comm'rs</u> v. <u>Brown</u>, 520 U.S. 397, 409 (1997)).  While the Supreme Court has acknowledged that it may not be necessary to demonstrate such a pattern in all cases, any exception is "narrow" and would arise only where the unconstitutional consequences of failing to train are "patently obvious".  <u>Id.</u> at 1361 (citing <u>Canton</u>, 489 U.S. at 390 n.10).

Plaintiffs have not provided any evidence that other administrators at Town public schools have failed to inform students facing disciplinary actions of the evidence against them.  Moreover, plaintiffs have not demonstrated an obvious likelihood that failing to train Principal Booras to follow the <u>Goss</u> standard would result in the alleged constitutional violation in question.  The <u>Goss</u> standard is stated in the school handbook with which she is presumptively familiar and the Court will not presume that any failure to follow <u>Goss</u> was due to the Town's failure to provide adequate training.

The Court will, however, dismiss this claim without prejudice to renewal of the subject claim if plaintiffs learn of a pattern of similar violations during discovery.

### C. Claims Based Upon Officer Cabral's Alleged False Testimony During Disciplinary Hearing (Counts 17-22)

#### 1. Section 1983 Claim Against Officer Cabral for Providing False Testimony (Count 17)

Count 17 alleges that Officer Cabral violated Ty's constitutional rights by providing false testimony at the suspension hearing.  The Complaint states that Officer Cabral testified to 1) the existence of photographs of the injuries to the other student, 2) the nature of the injuries depicted in those photographs and 3) her opinion that the injuries depicted were not from football pads.  Plaintiffs claim that no such photographs existed and that therefore Officer Cabral lied when she said that she had viewed them and testified about their contents.

#### a. Procedural Due Process

Officer Cabral asserts that, even if those allegations were true, Ty had no procedural due process right to be free from false testimony at a school suspension hearing.  Ty responds that the right to be free from false testimony unquestionably applies to suspension hearings because the procedural safeguards outlined in Goss would be useless if government officials were permitted to falsify evidence against students.

The Court agrees with Officer Cabral that Ty has not stated a viable procedural due process claim.  Procedural due process during a school suspension hearing requires only that a student

receive notice of the charges against him, an explanation of the evidence supporting those charges and an opportunity to present his side of the story. Goss, 419 U.S. at 581. Here, the Complaint reveals that Ty had an opportunity to respond to the subject testimony. For instance, Julianne asked Officer Cabral if injuries purportedly depicted in the photographs could have been caused by football pads during practice. Moreover, Ty does not allege that the subject testimony tainted the decision reached by Principal Booras. For instance, the letter provided by Principal Booras does not mention the photographs or even the injuries suffered by the student as evidence justifying his suspension. In short, even if Officer Cabral did testify falsely, Ty was not denied his right to procedural due process.

### b.  Substantive Due Process

Ty does no better to the extent that he asserts that Officer Cabral violated his right to substantive due process.

A plaintiff alleging that an executive official violated his right to substantive due process must show

> both that the acts were so egregious as to shock the conscience and that they deprived him of a protected interest in life, liberty, or property.

Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011) (citations omitted). Although there is no "scientifically precise formula" for what "shocks the conscience" and triggers the protections of the substantive due process clause of the

-18-

Fourteenth Amendment, the executive action must be "truly outrageous, uncivilized, and intolerable [and] the requisite arbitrariness and caprice must be stunning...." Id. The Supreme Court has been "firm in its reluctance to expand the doctrine of substantive due process." Marrero-Rodriguez v. Municipality of San Juan, 677 F.3d 497, 502 (1st Cir. 2012). Indeed, the various formulations of the "shock the conscience" standard deliberately set the bar high in order to protect the Constitution from "demotion to merely a 'font of tort law'." Cummings v. McIntire, 271 F.3d 341, 344 (1st Cir. 2001) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847-48 (1998)).

Assuming for the purpose of the motion to dismiss that Officer Cabral testified to the existence of photographs that she knew did not exist, such conduct does not rise to the level of egregiousness that would suffice to state a violation of the Fourteenth Amendment. Indeed, the First Circuit has declined to acknowledge any such violation under more extreme circumstances. For example, in Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617 (1st Cir. 2000), an off-duty police officer threatened and harassed plaintiffs, destroyed their property and pushed their pregnant daughter (who then miscarried). His fellow officers then refused to record plaintiffs' complaints and instead assisted him in instituting false charges against them, with respect to which he offered false testimony. Id. at 618-20. Describing the

question as a "close one," the First Circuit concluded that the officers' actions did not violate the plaintiffs' right to substantive due process. Id. at 623.

> ### 2. Conspiracy Between Officer Cabral and Officer Bondarek or John Doe #1 to Present False Testimony at School Suspension Hearing (Count 18)

Count 18 alleges that Officer Cabral conspired with Officer Bondarek and an unknown officer ("John Doe #1") to present false testimony at the disciplinary hearing in violation of Ty's right to due process.  Officer Bondarek and Officer Cabral both move to dismiss Count 18.  Their motions will be allowed.

The First Circuit defines civil rights conspiracy as

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.

Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (internal citations omitted).  To prevail on such a claim, a plaintiff must prove that "there has been, besides the agreement, an actual deprivation of a right secured by the Constitution or laws." Id. (quoting Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980)).

Ty's claim fails to meet that standard.  First, he has failed to allege the actual deprivation of a right.  He does not state a claim for violation of due process based upon his

allegations that Officer Cabral testified falsely at his suspension hearing. Furthermore, his reliance upon Limone v. Condon, 372 F.3d 39 (1st Cir. 2004), is misplaced. Limone analyzed whether public officials who allegedly framed the plaintiffs for murder were entitled to qualified immunity and, in doing so, held that individuals have the right not to be framed by state officials for crimes they did not commit. Id. at 44-45. The Court is unaware of any authority permitting it to extend that rule beyond the criminal context to school disciplinary hearings resulting in short suspensions.

### 3. Liability of Town for Failure to Train and Supervise Officer Cabral, Officer Bondarek and John Doe #1 (Count 19)

Because Ty has failed to state a claim with respect to Counts 17 and 18, Count 19, which is premised on those counts, also fails. Moreover, even if the Court errs in dismissing Counts 17 and 18, Ty fails to state a claim for failure to train and supervise. First, he has not alleged a pattern or practice of Sandwich Police officers testifying falsely at school disciplinary hearings. Connick, 131 S. Ct. at 1360. Second, he has not demonstrated an obvious likelihood that failing to train officers not to testify falsely at school disciplinary hearings would result in constitutional violations such as those alleged in the Complaint. Id. at 1361.

### 4. Infliction of Emotional Distress (Counts 20-21)

#### a. Intentional Infliction of Emotional Distress Claim Against Officer Cabral (Count 20)

Count 20 asserts a claim of intentional infliction of emotional distress ("IIED") against Officer Cabral based upon the conduct described above.

To prevail on an IIED claim, a plaintiff must demonstrate that (1) the defendant either intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of her conduct; (2) that the conduct was "extreme and outrageous and was "beyond all possible bounds of decency and was "utterly intolerable in a civilized community"; (3) that the defendant's actions caused the plaintiff's emotional distress and (4) that the plaintiff sustained severe emotional distress. Howell v. Enter. Publ'g Co., 920 N.E.2d 1, 28 (Mass. 2010) (quoting Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-19 (Mass. 1976)).

Plaintiffs contend that it is utterly intolerable for an official with the duty to uphold the law to make false statements during a proceeding intended to guarantee basic fairness to a member of the community. The Court agrees with that proposition but concludes, nevertheless, that Ty has failed to state a claim against Officer Cabral for IIED. First, Ty has not alleged facts to support the conclusion that Officer Cabral

caused him to suffer emotional distress solely by virtue of her false testimony. Instead, the Complaint indicates that Ty suffered emotional distress because he was suspended and missed football games. Second, Ty has not alleged that the statements caused his suspension. As noted above, Principal Booras's explanation for his suspension does not mention Officer Cabral or the substance of her alleged testimony. Reading the Complaint in the light most favorable to Ty, the most the Court can conclude is that Principal Booras "considered" the testimony of Officer Cabral along with other evidence such as the police report. The fact that Principal Booras considered such evidence, if true, does not suffice to prove causation.

### b. Negligent Infliction of Emotional Distress Claim Against the Town (Count 21)

Count 21 asserts a claim for negligent infliction of emotional distress (NIED) against the Town on the theory that it is vicariously liable for the negligence of Officer Cabral in testifying falsely at Ty's hearing. The elements of NIED are

> (1) negligence; (2) emotional distress; (3) causation;
> (4) physical harm manifested by objective
> symptomatology; and (5) that a reasonable person would
> have suffered emotional distress under the
> circumstances of the case.

Opalenik v. LaBrie, 945 F. Supp. 2d 168, 196 (D. Mass. 2013)

(quoting Sullivan v. Boston Gas Co., 605 N.E.2d 805, 807 (Mass.

1993)).  Ty's NIED claim fails to plead causation for the reasons stated above and therefore will be dismissed.

### 5.  Defamation of Ty by Officer Cabral (Count 22)

Count 22 alleges that Officer Cabral defamed Ty.  For Ty to prevail on his claim of defamation against Officer Cabral, he must establish that

> the defendant was at fault for the publication of a
> false statement regarding the plaintiff, capable of
> damaging the plaintiff's reputation in the community,
> which either caused economic loss or is actionable
> without proof of economic loss.

White v. Blue Cross & Blue Shield of Mass., Inc., 809 N.E.2d 1034, 1036 (Mass. 2004).  As a threshold matter, the Court must determine, as a matter of law, whether any alleged statement is "susceptible to defamatory meaning" because it would

> tend to hold the plaintiff up to scorn, hatred,
> ridicule or contempt, in the minds of any considerable
> and respectable segment in the community.

Amrak Prods., Inc. v. Morton, 410 F.3d 69, 72 (1st Cir. 2005) (quoting Phelan v. May Dep't Stores Co., 819 N.E.2d 550, 553 (Mass. 2004)).

Defendants assert that the operative statement is "I have seen photographs of injuries to the victim" and that such a statement, even if false, would not tend to hold Ty up to scorn or hatred in the community.  Ty responds that defendants mischaracterize Officer Cabral's statement because the issue is not whether the photographs exist but whether she falsely

-24-

implied that she had proof that Ty caused the victim's injuries. The Court agrees with Ty that the statement alleged in the Complaint is susceptible to a defamatory meaning. Moreover, at this stage in the proceeding, it is obligated to accept Ty's assertion that the statement and its implications were false.

Defendants also contend that, even if Ty could prove the elements of defamation, Officer Cabral is protected by the conditional privilege for public officials who act in good faith and without malice or corruption. See Vigoda v. Barton, 204 N.E.2d 441, 446 (Mass. 1965). Ty responds, and the Court agrees, that Officer Cabral may not claim that privilege at this stage because she knew that she had not seen photographs and that any statement about them was necessarily false. See Mulgrew v. City of Taunton, 574 N.E.2d 389, 392 (Mass. 1991) (explaining that a defendant who knowingly or recklessly publishes a defamatory statement is not entitled to conditional privilege).

### D. Claim Against Officer Bondarek and John Doe #2 for Conspiracy to Present False Testimony (Count 12)

Count 12 claims that Officer Bondarek conspired with John Doe #2 to provide false testimony at a court hearing on Ty's motion to suppress. Officer Bondarek argues that 1) any claim against Officer Bondarek for providing false testimony is barred by the absolute immunity from liability of witnesses who testify

at trial or during pre-trial proceedings and 2) Ty has failed to state a claim for a civil rights conspiracy.

The Court agrees that the claim against Officer Bondarek is barred by Rehberg v. Paulk, 132 S. Ct. 1497 (2012), in which the Supreme Court held that 1) a grand jury witness is absolutely immune from any § 1983 claim based upon his testimony and 2) that rule cannot be circumvented by pleading that the witness conspired to present false testimony. Id. at 1505-06. The Rehberg Court reasoned that the possibility of other sanctions, including prosecution for committing perjury, was sufficient to deter false testimony, whereas allowing retaliatory § 1983 suits might deter witnesses from providing critical evidence. Id. at 1505 (citing Briscoe v. LaHue, 460 U.S. 325, 333, 342 (1983)).

This Court will follow other courts that have extended the holding of Rehberg to testimony provided under oath at other pre-trial proceedings. See, e.g., Williams v. City of Boston, No. 10-10131, 2013 WL 5434687, at *3-4 (D. Mass. Sept. 27, 2013) (finding police officer entitled to absolute immunity for testimony provided under oath at a hearing on a motion in limine). In so doing, the Court presumes that Officer Bondarek testified under pain of perjury although the Complaint and the motion to dismiss are silent in that regard.

Ty has indicated that he is willing to withdraw the claim without prejudice subject to renewal once discovery is underway.

He contends that courts in this Circuit have allowed similar claims of conspiracy to move forward particularly when the conspiracy claim alleges wrongdoing in addition to perjury. See, e.g., Mitchell v. City of Boston, 130 F. Supp. 2d 201, 209-13 (D. Mass. 2001) (applying defendant-specific test under which a defendant is immune for conduct that is "inextricably tied to [her] participation in the judicial process").

To the extent that the cases cited by Ty remain viable after Rehberg, Officer Bondarek is entitled to absolute immunity because any conspiracy to provide false testimony was inextricably tied to his role as a witness at the hearing. But the unidentified alleged co-conspirator, John Doe #2, may not be protected by the privilege because there is no allegation that he had any role in the criminal proceeding. See id. at 213 (finding co-conspirator whose wrongful conduct was unrelated to his role in judicial proceedings could not claim absolute immunity from liability for civil rights conspiracy). The Court will therefore dismiss Count 12 with prejudice as to Officer Bondarek but without prejudice to renewal with respect to John Doe #2 following discovery.

## ORDER

For the foregoing reasons,

1) The motion of defendant Brian A. Bondarek to dismiss Counts 12 and 18 (Docket No. 12) is **ALLOWED**;

2) The motion of defendants Ellin C. Booras, Christa L. Cabral, Charles Richard Canfield and the Town of Sandwich to dismiss Counts 17 through 26 (Docket No. 24) is, with respect to Counts 17, 18, 19, 20, 21, 24 and 26, **ALLOWED**, but is, with respect to Counts 22, 23 and 25, **DENIED**;

3) Counts 17, 18, 19, 20, 21 and 24 are **DISMISSED WITH PREJUDICE**;

4) Count 12 is **DISMISSED WITHOUT PREJUDICE** to renewal following discovery of the role of John Doe #2 but **DISMISSED WITH PREJUDICE** as to the liability of defendant Brian A. Bondarek; and

5) Count 26 is **DISMISSED WITHOUT PREJUDICE** to renewal upon discovery of a pattern of similar violations.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 16, 2014